Good morning, Your Honors. May it please the Court, Alan Agabigian appearing on behalf of the petitioner Anna Grigoryan, who is, by the way, present in court this morning. At this time, I'd like to reserve two minutes for rebuttal. Despite the several issues that are addressed by both parties in this case, I'd like to touch upon just two pivotal issues that I think really need to be decided upon here. One is the on-account of or nexus requirement pursuant to the Real ID Act. And the other one is whether or not the perpetrators, the persecutors in this case, were acting on behalf of the government or a group that the government was unable or unwilling to control. As to credibility, the judge and the BIA found the testimony and the record truthful. So credibility is not at issue here. The response veracity is not at issue. And the standard review here is the substantial evidence and whether or not the issues raised would support the IJ and the BIA's findings. And I will submit to this Court that the record does not support the IJ or the BIA's conclusions. As to the nexus requirement, and again, I don't want to touch upon everything because of the time constraints. But the Real ID Act essentially requires a showing that a protected ground was at least one central reason for the persecution. While Petitioner concedes that this, in fact, heightens the burden of proof with respect to the prior decisions by this Court as to what constitutes nexus, the Real ID Act in no way was intended to require an unequivocal showing of the persecutors' motivation. And the Real ID Act, likewise, more importantly, in no way alters the well-established principle of this Court, as well as the Supreme Court, that the term on account of does not place upon the applicant and the onerous burden of providing direct proof of the persecutors' motives. All that is needed is some evidence of motive, whether direct or circumstantial. And in the case before us, Your Honors, I would submit that the record compels a finding that, albeit everything is, in essence, circumstantial in nature, petitioner activities were, in fact, not only a central reason, but the only reason for all the incidents accounted for in the record. And in fact, the record, Your Honors, is completely devoid of anything else, any other reason for the persecution. There's not a single evidence of an ex-spouse, an ex-employee. Why don't you just tick off the past persecution that your client suffered? Okay. You're just making a speech to us. Okay. Well, as far as the past persecution, Your Honor, this Court recently had a very fantastic opinion in the Corropection matter, Your Honor. And it substantiated the fact that past persecution does not require the law. And we know that. Just answer the question. You're requiring a word of past persecution is here? Well, I said, why don't you take it off? Yeah. Well, Your Honor, the past persecution basically is the fact that and I'm looking at a timeline, Your Honor. I think in order to establish a nexus, maybe we can look at a timeline of all the events here. Okay. The Respondent, Your Honor, and just looking at timelines and just simple logic dictates the outcome in this case. The Respondent joins and forms, actually, a social group called SHITOC in 2003, along with a small group of other students. As part of her duties to basically establish and coordinate meetings, and especially a meeting that occurred on June 5, 2004, she met with individuals, including very high-ranking officials of the government, the Defense Ministry, particularly in this case, to discuss, Your Honors, the problems and the human right abuses in the military, which is discussed in the Department of State's human rights records. She met with the officers. In her declaration, it says that because the officials were not responding to the written or telephone request, she had to actually personally go and meet these officers. And she told them that, I actually told them I was going to stick my nose into their affairs, and I have American support and sources to back me up. Shortly after these meetings, Your Honors, and before the conference, Mr. Mel Cornyan, a high-ranking official of the Defense Ministry, approaches her and warns her why a young, beautiful girl like her would be involved in such heavy things. Aren't you afraid of the outcome? Now, the Respondent may not have taken this as a threat, Your Honors. I assume that this is nothing but a threat. The conference takes place shortly thereafter. She's approached by another attendee of the conference, advising her that she was called in for an interrogation by the Defense Minister himself, Serzh Tserkisyan, who happens to be the President of Armenia today, as well as Mr. Mel Cornyan, who had made a statement to her, basically just inquiring as to the reason for the petitioner's involvement and inquiries into these matters, and basically just using profanities I'd prefer not to restate in this court. This was the attendee who relayed this message to the petitioner, specifically told her, and the petitioner, in fact, found this to be a specific threat and warning to stay away from these issues. Shortly after that, Your Honors, she starts receiving emails. She starts receiving telephone calls. There's two very scary emails, which the judge herself admits were very scary in nature. Then she's attacked, again, by unknown men, admittedly so. Was that the attack in the tunnel? Exactly, Your Honor. And wasn't there something said to her during that attack that kind of links this together or not? It is that she specifically was told the word F is the letter that she wrote, F away, will be better off without your kind. And this is in the record on page 395. She leaves for the US, and she's truthfully saying that at that time, despite these incidents, I was planning on going back. She comes here, her father, who works, in fact, for the military police, calls her and says, hey, someone in the military approached me and told me, do not come back. Basically, the government officials, the defense minister, the high officials are not too happy with her involvement, with her actions. And he, in essence, ordered her not to return to Armenia. And she leaves very shortly after that attack. She leaves within a few days after the attack. Correct, Your Honor. And I think that's very telling. I think it speaks volumes. She still doesn't apply for asylum. She's thinking she gets into a fight with her father. She's very ambitious. She's a fighter, obviously, as the record reveals. She received a third email. This third email just coincidentally happens to be on May 13, 2006. Again, a very threatening email. And just a few days after receiving that email on May 19, 2006, six days after receiving that email, she applies for asylum. So if we're to take into consideration the timeline and just not ignore logic, I think that the record compels that, yes, admittedly so, everything here is circumstantial, but the only evidence in this case basically shows that these incidents were, were, were, these actions were by government officials or people acting on their behalf. There's nothing in the record whatsoever to show anything otherwise. I believe, again, Your Honor, and I'll briefly touch upon also on the past persecution. I believe that these incidents, sure, maybe in passing separately would not constitute, would not raise or rise the level of persecution. But I think in totality of these circumstances, all of them taken together would rise to the level of persecution. And you don't need past persecution if you can show well-founded fear. And that's exactly where I was going, Your Honor. That's exactly my point. Even for the sake of argument, if there is no past persecution, those incidents can be taken into consideration to show the well-founded fear. And the difficulty you have with what the BIA did is not on the level of whether or not there was a well-founded fear, the difficulty is nexus. And I would say, and the government may wish to respond, I see no other plausible explanation than there is some connection between what happens to her and the threats that she's getting and the political activity she's engaged in. I couldn't agree with you more, Your Honor. Okay. Very good. You've come all the way from Washington, D.C., huh? Yes, I have, Your Honor. Welcome to Pasadena. Thank you. Good morning. May it please the Court, you know, I'll use it for the Attorney General. The Court should uphold the decision of the Board and deny the petition for review because the petitioner has failed to demonstrate that the record compels the conclusion that the harm she endured rose to the level of persecution and was on account of a protected ground. None of the incidents in which she was involved, was there any mention of her work with the human rights group or? Wait a minute, that's just not true. I mean, how do you explain, the guy says, well, you're a pretty young woman, how can, you know, why are you involved in such heavy things? What other explanation for that comment is there that's connected to a political activity? In that specific instance, there was no linking that comment, while it may have been deemed harassing, there was no connection to any of the other incidences. And if taken alone, that's- That's what it was all about. We're in the real world in Pasadena. Well, based on the substantial evidence, the standard review, the court must find that the record would compel such a conclusion, or in other words, that the immigration judge or the board, that no reasonable adjudicator could have come to the conclusion that they came. Here, there was nothing in the record establishing connection. We know that. There is a, sorry. We know that. There's nothing to, in none of the instances was her work with that group mentioned. And the anonymous calls, the unidentified emails, the windows, the physical- Okay, listen, I'm on page 41. It's 41 in the transcript. I don't have the AR because it's in a good cutoff of the Xerox. She's talking about the episode in the tunnel. I was shocked. I was in fear. I only remember the words, the cursing, mainly the types of expressions. When are you going to shut your mouth? Don't you understand it's very dangerous for those things? It's as plain as the nose in front of my face. They're after her because she's complaining about what's going on in the government. Is there any other rational explanation for these words? The way the approach that we take is the fact that it was on her burden to establish that there was that connection. And the record- No, maybe you're not listening to me. She says, and we're, this is credible, so this is what happened. She says, they told me, when are you going to shut your mouth? Don't you understand that it's very dangerous for you, those things? What are they talking about other than her political activities? Anything? Do you have any explanation for that other than political activities? I don't, Your Honor. And it was on Petitioner's, Petitioner's, as the burden establishing that that mistreatment was connected to her political activities. But I'm asking you, the explanation jumps out at me that they're telling her to shut her mouth because she's saying things that they don't want to hear, the things that she's been talking about are political. Do you have some other explanation for these words? I don't, Your Honor. But at the same time, it's unclear from the record what that motivation was. Petitioner did not establish to the adjudicators, I guess- Well, what other reasonable conclusion could be drawn? Tell us some plausible, reasonable conclusion that could be drawn. Well, it's unclear that whether these were isolated criminal activities that related to another matter entirely, but the, it was upon her, the immigration judge and the board just were unable to discern why the, why all these instances were happening, or at least, in other words, didn't establish that she met her burden in meeting the fact that it was on a counter-protective ground. Even without conceding that, the nexus aspect, if we were to take a look at the, the harm that Petitioner endured, the anonymous phone calls, the harassing comments by the, the government official, as well as the emails, as well as the attack in the, the, the, I believe the individual, the unidentified individuals who broke her windows, and in that context, sorry. You know, you had the defense minister, McCoyan, you know, you heard, why a young beautiful girl like you would be involved in such a heavy thing? You know, asked her whether she was scared of the outcome. Look, we know, because we've been doing this a long time, you're just getting started, see, and there's a lot of bad things going on in Armenia, huh? You know that, don't you? I understand that, Your Honor. Okay, so we have to look at it, at that background of what's going on. Country reports, refugees coming out of there, the tensions that exist. I, I understand that, in this case, the Petitioner would have to still meet her burden in establishing that she was indeed a refugee under the, the, the Immigration, Immigration Act. And as to the officials by the, the, the, the statements by the government officials, there was nothing linking any of those statements to any of them. How about another one? She's talking to her father, and she's trying to protect her father. Her father warns her not to come back. And her father recounts, and I'm now just reading her testimony, one of his, his father's, one of his co-workers approached him. He works in the military police. I mean, he just simply announced that your daughter's getting too much involved. I mean, not that it's not expected from your family, but she's just going too far, and I think it's going to be dangerous for her. Again, what other explanation do we have? It's not that she's, you know, bad-mouthing her boyfriend, and we got some vengeful boy coming after her. We're talking politics. Even if we take that, the fact that she met the, the nexus aspect, it's, it goes back to, to the, the, whether she established the harm rose to the level of past persecution. No, no, she doesn't need past persecution if she can establish well-founded fear. Right, right. Do you understand that? I understand that. Even in that case, if we were to look at the well-founded fear, Petitioner was specifically asked in her testimony, what did she fear if she did not articulate a specific, any specific harm? She didn't, she indicated that a case may be opened up against her, but without anything specific, and she was, that was purely speculation in her testimony. And she must establish, provide credible, specific, and direct evidence as to a reasonable probability of harm. And there is nothing in the record to establish that any individuals were seeking to harm her, or that the fact that, that she, I guess this may go to past persecution, but as well as to the fact of the well-founded fear. She left based on, it was a pre-planned decision to leave. You know, if a, if a child of mine reported to me everything that happened to her, much as I love this country, I would tell her to leave. I think she is in danger. I understand that. She's getting threats. She's getting assaulted in a tunnel. I mean, what, do you want her to get killed before she can come here? Of course not, Your Honor. And the fact that, in this case, the petitioner indicated that after every, of the incident that was in, the windows were broken, the attack in the tunnel, she did not report that she did not inform her father of this, who was in the military police, or the university, institutions and people who may have been able to assist her in the matter. And so you report this to the government that's persecuting you in order that the government should protect you. Is that what she's supposed to do? Well, report it to her father. And if, if the, the situation was as grave as, as, as she claims, then you would think that she would, in fact, tell her father, who is a member of the military, who could possibly find out information or provide a, or... Wasn't she concerned about, concerned about retaliation against her father? And that was the reason she gave for not reporting it? What I see is that she, like, for example, the incident that, in the tunnel where she was attacked, she indicated that it was, it was a short incident and it didn't rise to a level in order to seek treatment or to worry her father about the incident. So with that, to, to me, it indicates that, that her, or she wasn't as concerned as, she may have been concerned after the fact, based off of some indication from a friend of her father's. But at that time, that would indicate that she, she didn't view these situations as it was such a, it's such a grave circumstance. Okay, thank you. Thank you for your time. Ah, you just submitted it on the preview. Yeah, okay. Ah, thank you.
judges: Bennett, Pregerson, Fletcher